IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DISABILITY RIGHTS PENNSYLVANIA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. _____ |
| | : |
| ERIE COUNTY, PENNSYLVANIA, | : |
| | : |
| Defendant. | : |
| | : |

## **COMPLAINT**

## I.    **Introduction**

1.    Plaintiff, Disability Rights Pennsylvania (DRP), is the organiza-
tion designated pursuant to the Protection and Advocacy for Individuals
with Mental Illness Act (PAIMI Act), 42 U.S.C. §§ 10801-10827, and the
Developmental Disabilities Assistance and Bill of Rights Act (DD Act), 42
U.S.C. §§ 15041-15043, to protect the rights of and advocate for Pennsyl-
vanians with mental illness and developmental disabilities.  DRP's authority
under the PAIMI and DD Acts includes the authority to access the records
of such individuals in certain circumstances.

2.    In accordance with its authority under the PAIMI and DD Acts,
in December 2018 DRP submitted requests to the Erie County Public
Defenders' Office and the Erie County Office of Children and Youth, which

are administered by the Defendant, for the records of T.L., a 16-year-old youth with mental illness and a developmental disability.

3.     T.L. has been adjudicated dependent and the Erie County Office of Children and Youth has physical and legal custody of him.

4.     T.L. has been institutionalized in congregate settings for most of the last few years, including state detention centers for most of the last 16 months.  He has been subject to repeated physical restraints resulting in physical and mental harm.  On information and belief, he has not been receiving the services and supports – including educational and life skills services – that he needs to make a successful transition to adulthood.

5.     Despite repeated requests for T.L.'s records and discussions with Erie County's counsel to try to resolve this matter, Erie County has refused to provide the records.

6.     Defendant's refusal to provide DRP with the requested records relating to T.L. violates 42 U.S.C. § 1983 and the PAIMI and DD Acts. DRP seeks appropriate declaratory and injunctive relief.

## II.    <u>Jurisdiction and Venue</u>

7.     The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331.  Declaratory relief is sought under 28 U.S.C. §§ 2201 and 2202.

8.      Plaintiff's claims are authorized by 42 U.S.C. § 1983, the PAIMI

Act, 42 U.S.C. §§ 10801-10827, and the DD Act, 42 U.S.C. §§ 15041-

15045.

9.      Venue in this District is appropriate pursuant to 28 U.S.C. §

1391(b)(1)-(2) since Defendant is located in this District and the events and

omissions that gave rise to the Complaint occurred in this District.

## III.   Parties

10.     Plaintiff DRP is a non-profit Pennsylvania corporation.  The

Commonwealth of Pennsylvania has designated DRP as the organization

with responsibility to advocate for and protect the rights of individuals with

disabilities and to investigate abuse and neglect of individuals with

disabilities pursuant to, *inter alia*, the PAIMI and DD Acts.

11.     Defendant Erie County is a Pennsylvania county of the third

class.  16 P.S. § 210(3).  The Office of Children and Youth (OCY) and the

Public Defenders' Office (PDO) are two agencies within Erie County.  OCY

is responsible to administer the child welfare system in Erie County,

including exercising custodial responsibility for Erie County children who

have been adjudicated dependent and/or delinquent.  The PDO is respon-

sible to provide legal representation to Erie County citizens in certain

criminal proceedings, including Erie County juveniles in delinquency cases, who are not financially able to retain counsel.

## IV.   **Factual Background**

12.   Pursuant to the Developmental Disabilities Assistance and Bill of Rights Act (the DD Act), 42 U.S.C. §§ 15041-15045, the Protection and Advocacy for Individuals with Mental Illness Act (the PAIMI Act), 42 U.S.C. §§ 10801-10827, and the Protection and Advocacy of Individual Rights Act (the PAIR Act), 29 U.S.C. § 794e, Congress authorized states to designate protection and advocacy systems (P&A systems).

13.   Congress authorized designated P&A systems to protect the rights of and advocate for individuals with developmental disabilities under the DD Act, 42 U.S.C. § § 15041,15043(a)(1), individuals with mental illness under the PAIMI Act, 42 U.S.C. §§ 10801(b), 10805(a), and individuals with disabilities not otherwise covered by the DD or PAIMI Act under the PAIR Act, 29 U.S.C. §§ 794e(a)(1), 794e(f).

14.   DRP is the P&A system designated by the Commonwealth of Pennsylvania to protect the rights of and advocate for Pennsylvanians with disabilities pursuant to the DD, PAIMI, and PAIR Acts.

15.   For purposes of the PAIMI Act, an individual with mental illness is a person who has a significant mental illness or emotional impairment. 42 U.S.C. § 10802(4).

16.   For purposes of the DD Act, an individual with a developmental disability is a person who has a severe, chronic disability that: (a) is attributable to a mental or physical impairment; (b) manifested before age 22; (c) is likely to continue indefinitely; (d) results in substantial functional limitations in three or more of the following major life activities: self-care; language; learning; mobility; self-direction; capacity for independent living; and economic self-sufficiency; and (e) reflects the individual's need for services, supports, or other assistance.  42 U.S.C. § 15002(8).

17.   The PAIMI and DD Acts confer upon P&A systems, such as DRP, the authority to investigate incidents of abuse and neglect of individuals with, respectively, mental illness and developmental disabilities when the incidents are reported or there is probable cause to believe that the incidents occurred.  42 U.S.C. §§ 10805(a)(1)(A), 15043(a)(2)(B).

18.   The PAIMI and DD Acts define "abuse" to include, *inter alia*, actions or failures to act by employees of facilities that provide care and treatment which causes or may cause injury to an individual with mental

illness, including inappropriate use of restraints.  42 C.F.R. § 51.2; 45

C.F.R. § 1326.19.

19.    The PAIMI and DD Acts define "neglect" to encompass, *inter

alia*, acts or omissions by a person responsible for providing services,

supports, or other assistance to a person with a covered disability which

caused or may cause injury to such a person.  Neglect includes the failure

to establish or implement an appropriate program or treatment plan,

including a discharge plan, failure to provide a safe environment, and

failure to maintain adequate and appropriately trained staff.  42 C.F.R. §

51.2; 45 C.F.R. § 1326.19.

20.    To assure that P&A systems, such as DRP, can implement

their investigative authority, the PAIMI and DD Acts provide them with

certain tools.  Among those tools is the right to access the records of

individuals with, respectively, mental illness and developmental disabilities

under defined circumstances.  42 U.S.C. §§ 10805(a)(4), 15043(a)(2)(I).

21.    P&A systems, such as DRP, have the right to access the

records of individuals with mental illness and developmental disabilities if

they or their guardians or legal representatives authorize such access.  42

U.S.C. § 10805(a)(4)(A) and 42 C.F.R. § 51.41(b)(1) (PAIMI Act); 42

U.S.C. § 15043(a)(2)(I)(i) and 45 C.F.R. § 1326.25(a)(1) (DD Act).  A P&A

6

system has the right to obtain the records of individuals with disabilities who authorize such access regardless of whether the system is investigating abuse or neglect.

22.    A P&A system, such as DRP, also can obtain the records of an individual with mental illness or developmental disability under either of the following circumstances:

a.    First, if the individual is unable to authorize such access (e.g., to the extent state law may limit his or her access to records if s/he is a minor) and the individual either does not have a legal guardian or his or her legal guardian is the government, the P&A system can access his or her records when it has received a complaint or has probable cause to believe that he or she has been subject to abuse or neglect.  42 U.S.C. § 10805(a)(4)(B) and 42 C.F.R. § 51.41(b)(2) (PAIMI Act); 42 U.S.C. § 15043(a)(2)(I)(ii) and 45 C.F.R. § 1326.25(a)(2) (DD Act).

b.    Second, if the individual has a non-governmental guardian or legal representative, the P&A system may access his or her records if:  (i) the system has contacted and offered assistance to the guardian; (ii) the guardian has failed or refused to act on behalf of the individual; and (iii) the P&A system has probable cause to believe that the individual has been subject to abuse or neglect (in the case of the DD Act)

or that the individual's health or safety is in serious and immediate jeopardy (in the case of the PAIMI Act).  42 U.S.C. § 10805(a)(4)(C) and 42 C.F.R. § 51.41(c) (PAIMI Act); 42 U.S.C. § 15043(a)(2)(I)(iii) and 45 C.F.R. § 1326.25(a)(3) (DD Act).

23.    The Erie County OCY is the children and youth agency in Erie County responsible to implement the powers and duties to provide child welfare services in accordance with Pennsylvania law, 62 P.S. § 2305.

24.    The Erie County OCY, like all local children and youth services agencies, is responsible to provide services to help maintain children in their own homes; prevent neglect, abuse, and exploitation; overcome problems that result in dependency or delinquency; and provide adequate substitute care to any child in need of such care.  62 P.S. § 2305; 55 Pa. Code § 3130.12(c).

25.    The Erie County OCY, like all local children and youth services agencies, is responsible to provide services and care for children and youth who have been adjudicated dependent or delinquent pursuant to the Pennsylvania Juvenile Act, 42 Pa. Cons. Stat Ann. Ch. 63.  62 P.S. § 2305; 55 Pa. Code § 3130.12(c)(5).

26.    In November 2017, DRP conducted an on-site monitoring and investigation at Loysville Youth Development Center (Loysville YDC), a

state-operated detention center for youth who have been adjudicated delinquent located in Perry County.

27.    During DRP's visit to Loysville YDC, DRP staff met with and interviewed T.L.

28.    In November 2018, DRP staff visited North Central Secure Treatment Unit (NCSTU).  NCSTU is a state-operated detention center for youth who have been adjudicated delinquent located in Montour County.

29.    During DRP's visit to NCSTU, DRP staff met with and interviewed T.L.

30.    T.L., who is now 16 years old, is a resident of Erie County.

31.    T.L. has mental illness, including diagnoses of post-traumatic stress disorder, disruptive mood dysregulation disorder, conduct disorder, and attention deficit hyperactivity disorder.

32.    T.L.'s mental health impairments are developmental disabilities since they manifested prior to age 22, are likely to continue indefinitely, result in substantial functional limitations in self-care, learning, self-direction, and capacity for independent living, and reflect his need for services and supports for those disabilities.

33.    T.L. also has asthma.

34.   The Erie County OCY instituted proceedings in or around 2013 to adjudicate T.L. as dependent.  On information and belief, the proceedings were instituted because T.L. had been physically abused in his family home.

35.   The Pennsylvania Court of Common Pleas in Erie County adjudicated T.L. as dependent and gave the Erie County OCY legal and physical custody of T.L.  The most recent court order in the dependency proceeding dated September 21, 2018 provides that "[t]here shall be no visitation and/or contact between the parents and the minor child."  T.L. remains in the physical and legal custody of the Erie County OCY.

36.   On information and belief, in or around 2015, the Pennsylvania Court of Common Pleas in Erie County adjudicated T.L. as delinquent. Counsel from the Erie County PDO represented him in those proceedings.

37.   Since coming into the custody of the Erie County OCY, T.L. has been placed primarily in institutional settings, including a psychiatric hospital and a residential treatment facility.

38.   Since October 2017, T.L. has primarily lived in state-operated youth detention centers.  Between mid-October and mid-December 2017, he was placed at Loysville YDC.  In mid-January 2018, T.L. was placed at NCSTU, where he remains.

39.    Far from thriving in the institutional settings, T.L. seemingly has made little, if any, progress and he is hurtling toward adulthood without securing the education, life skills, personal connections, and mental health stability he will need to succeed in society.

40.    In the 12 months he was in a residential treatment facility between 2016 and 2017, he had 32 disciplinary sanctions and the facility discharged him for "failure to adjust."

41.    In the mere two months at Loysville YDC at the end of 2017, T.L. was involved in 13 "incidents," sometimes resulting in the use of severe physical restraints that caused him physical and/or mental harm.

42.    At NCSTU, T.L. also has been subjected to repeated use of physical restraints, resulting in physical and mental harm.  T.L.'s asthma places him at high risk of potentially serious injury when he is physically restrained.

43.    After more than a year at NSCTU, T.L. has seemingly made little progress.  He has cycled through his treatment groups and has not implemented the treatment concepts in a consistent manner.

44.    T.L. is described as "the scapegoat on the dorm" at NCSTU.

45.    T.L.'s education has apparently suffered during his time in OCY custody.  He is currently in 8th grade.  As of September 2018, his reading and math skills were tested at about the fourth-grade level.

46.    T.L.'s life skills have fared no better.  As of January 2019, his test scores on six life skill domains (such as daily living, self-care, housing and money management) ranged from 21% to 52%.

47.    A psychiatric evaluation dated October 23, 2017 conducted at Loysville YDC suggested that T.L. might have a diagnosis of intellectual disability and indicated that he should be tested for that disability.  On information and belief T.L. has not received testing to determine if he has intellectual disability.  Such a diagnosis might explain T.L.'s ongoing struggles with education and independent living skills and his inability to benefit from mental health services that are not adapted for people with intellectual disability.

48.    Despite T.L.'s lack of progress at NCSTU, his projected release date is not until October 2019.  To date, the Erie County OCY has not identified any release resource for him.  He cannot return to his family and efforts to identify other kin have been unsuccessful.  Unless and until the Erie County OCY identifies familial or other community supports, he is likely to remain at NCSTU, possibly beyond October 2019.

49.    When DRP interviewed him at Loysville YDC in 2017 and at NCSTU in 2018, T.L. signed authorizations to allow DRP to access his records from the Pennsylvania Department of Human Services (PaDHS). DRP submitted requests for T.L.'s records to PaDHS together with T.L.'s authorizations following those interviews. PaDHS produced the requested records.

50.    During DRP's interview with T.L. at NCSTU, T.L. signed a separate release to allow DRP to access his records from the Erie County OCY and PDO.

51.    On December 10, 2018, DRP sent letters to the Erie County OCY and PDO, together with copies of T.L.'s signed authorization.  DRP requested that those agencies provide records relating to T.L. pursuant to the DD and PAIMI Acts.

52.    DRP sought T.L.'s records from Erie County to conduct an abuse and neglect investigation relating to his treatment and services.

53.    By email dated December 14, 2018, Erie County's Solicitor responded to DRP's requests for records directed to the OCY and PDO. The Solicitor stated that the authorization submitted by DRP and signed by T.L. was not valid because it was not executed by a guardian or person with authority to sign on his behalf.  The Solicitor told DRP that one of

13

T.L.'s birth parents would need to provide an authorization since their parental rights had not been legally terminated.

54.    By email dated December 20, 2018, DRP responded to the Erie County Solicitor.  In that email, DRP wrote that: (a) T.L. has authority to authorize the release of his own mental health records pursuant to the Mental Health Procedures Act, 55 Pa. Code § 5100.33, so Erie County would at least have to produce those records in its possession, custody, or control; (b) if DRP's understanding that T.L. had been adjudicated dependent was mistaken then Erie County should provide documentation to that effect as well as contact information for his parents; and (c) DRP is entitled to access the requested records without any authorization since it had probable cause to conclude that he had been subject to abuse or neglect.

55.    Receiving no response, DRP again emailed the Erie County Solicitor on January 22, 2019 to inquire as to the status of the records request.  The Solicitor responded by email the same day stating that its "position had not changed."  Nevertheless, the Solicitor went on to state that he was "informed that the only guardian who has been appointed is a guardian ad litem designated by the Court in order to avoid ex parte

proceedings" – a statement which in fact reflected a change from his prior position that T.L.'s parents must authorize the release of his records.

56.     Responding by email to the Erie County Solicitor later the same day on January 22, 2019, DRP asked the Solicitor to: (a) confirm that the County would not release even T.L.'s mental health records, and (b) provide the guardian ad litem's contact information.  The Solicitor confirmed by email dated January 23, 2019 that the County would not release any records pursuant to T.L.'s authorization and provided the contact information for T.L.'s guardian ad litem.

57.     Although DRP did not agree with the Solicitor's statement that T.L.'s guardian ad litem had authority to authorize release of the requested records, in an effort to resolve the issue and secure the records DRP sent a letter via mail and email to T.L.'s guardian ad litem on January 25, 2019. DRP provided her with a copy of T.L.'s authorization to release his Erie County records to DRP.  DRP also advised her that it had probable cause to believe that T.L. had been subject to abuse or neglect.  DRP told her that Erie County's position was that she, as his guardian ad litem, had authority to authorize the release of T.L.'s records from the Erie County OCY and PDO.  DRP enclosed a release form authorizing the release of T.L.'s records and requested that she sign it.

58.    On January 31, 2019, T.L.'s guardian ad litem sent a letter by mail and email to DRP.  In that letter, she stated that Pennsylvania law did not allow her to even confirm or deny that she represented T.L.  She further wrote that guardians ad litem only represented the interests of dependent youth in Dependency Court and Orphan's Court.  She concluded:  "I am not the guardian of any of the children I represent; rather, I am the guardian *ad litem*.  The Office of Children and Youth is the legal guardian of dependent children in Erie County.  …  I have no legal authority to authorize the release of any information pertaining to any of my dependent child clients."

59.    DRP forwarded the January 31, 2019 letter from T.L.'s guardian ad litem to the Erie County Solicitor on the same day.  DRP advised that since T.L. is a dependent child whose legal guardian is the government, DRP is entitled to the records requested.  DRP again requested that Erie County produce the requested documents.

60.    On or around February 4, 2019, outside counsel for Erie County contacted DRP to discuss the matter.  DRP explained its authority to access T.L.'s records under federal law.  Erie County's counsel requested additional information supporting DRP's access authority, including other cases in which it had enforced that authority.  DRP promptly provided that information.

61.     Erie County's outside counsel subsequently advised DRP that he was meeting with the Erie County OCY and PDO staff and would advise DRP of its decision.

62.     On February 14, 2019, DRP emailed Erie County counsel requesting an update on the status of the decision.

63.     On February 22, 2019, Erie County's Solicitor emailed DRP stating that the request for T.L.'s records had again been reviewed and that the County "remains of the view that an effective release is necessary and that it cannot, on its own authority, release the records you request.  … Even assuming that it had the power to authorize release, the County would decline to do so as a matter of discretion as it does not have a basis for the action."

64.     The Erie County OCY and PDO, to date, have not produced to DRP any of the requested records relating to T.L.

65.     DRP is entitled to receive the requested records relating to T.L. from the Erie County OCY and PDO pursuant to the PAIMI and DD Acts.

66.     First, DRP is entitled to access some of T.L.'s records pursuant to the provisions of the PAIMI and DD Acts that allow a P&A system, such as DRP, to have access to all records of an individual who authorizes such access or whose legal guardian or other legal representative authorizes

such access.  42 U.S.C. § 10805(a)(4)(A) and 42 C.F.R. § 51.41(b)(1) (PAIMI Act); 42 U.S.C. § 15043(a)(2)(I)(i) and 45 C.F.R. § 1326.25(a)(1) (DD Act).

a.    T.L. executed a release, authorizing DRP to access his records from the Erie County OCY and PDO.

b.    Pursuant to the Mental Health Procedures Act and its implementing regulations, youth age 14 and older have authority to release their mental health records.  55 Pa. Code § 5100.33.  T.L.'s authorization thus required Erie County to produce to DRP his mental health records (including, but not limited to, psychiatric evaluations and records relating to his placement in mental health programs or facilities).

c.    Pursuant to Juvenile Court Rule 160.A.2, a juvenile in a delinquency proceeding has authority to access the official court record, which would be in the possession, custody or control of the Erie County PDO.  T.L.'s authorization thus required Erie County to produce that official court record to DRP.

67.    Second, to the extent that there are some records to which T.L. is unable to authorize access, DRP still is entitled to access those records. The PAIMI and DD Acts provide that a P&A system, such as DRP, can access the records of an individual with respect to whom there is probable

cause to believe that s/he has been subject to abuse or neglect if the individual is unable to authorize access and if s/he either does not have a legal guardian or has a legal guardian which is a state or one of its political subdivisions (i.e., a governmental guardian).  42 U.S.C. § 10805(a)(4)(B) and 42 C.F.R. § 51.41(b)(2) (PAIMI Act); 42 U.S.C. § 15043(a)(2)(I)(ii) and 45 C.F.R. § 1326.25(a)(2) (DD Act).

      a.    The PAIMI and DD Act regulations define "legal guardian, conservator, and legal representative" to include individuals appointed by state court and whose appointments are subject to regular judicial review and who are authorized to make decisions.  It does not include attorneys or other persons acting on behalf of an individuals with disabilities only in individual legal matters.  42 C.F.R. § 51.2 (PAIMI Act); 45 C.F.R. § 1326.19 (DD Act).

      b.    T.L.'s guardian ad litem is not his legal guardian or representative under the PAIMI and DD Acts.  She has been appointed only as a representative for him in his dependency proceeding and as his educational decision-maker.

      c.    T.L.'s birth parents are not his legal guardians or representatives.  The Court of Common Pleas not only removed T.L. from their

custody, but it even barred any visitation or contact between T.L. and his parents.

d.      The Court of Common Pleas appointed the Erie County OCY, an agency of Erie County and thus a governmental guardian, to have physical and legal custody of T.L. with authority to make decisions for him. As such, the Erie County OCY is T.L.'s legal guardian or representative under the DD and PAIMI Acts.

e.      DRP has made a determination that it has probable cause to conclude that T.L. has been subject to abuse and neglect based on, *inter alia,* his subjection to inappropriate and harmful restraints at Loysville YDC and NCSTU; his placement in unnecessarily segregated settings where he has not received appropriate mental health treatment; the failure to assure he has access to appropriate educational and life skills services to prepare him for adulthood in light of his disabilities; and the failure to timely assess whether he has an intellectual disability and, if so, to assure that he has appropriate services.

f.      Since DRP is seeking records from Erie County relating to, *inter alia*, its decisions relating to T.L. and Erie County is his legal representative, Erie County has a conflict of interest that would preclude it from making an impartial decision on whether to release his records.

68.     Third, the PAIMI and DD Acts would still authorize DRP's access to T.L.'s records even if the Erie County OCY was not a governmental guardian.  The PAIMI and DD Acts provide that a P&A system, such as DRP, can access the records of an individual who has a non-governmental guardian or legal representative if (in the case of the DD Act) the P&A system has probable cause to believe that the individual has been subject to abuse or neglect or if (in the case of the PAIMI Act) the P&A system has probable cause to believe that the individual's health or safety is in serious and imminent jeopardy and (in the case of both the DD and PAIMI Acts) as long as the P&A system has contacted the guardian or legal representative and s/he fails or refuses to act.  42 U.S.C. § 10805(a)(4)(C) and 42 C.F.R. § 51.41(c) (PAIMI Act); 42 U.S.C. § 15043(a)(2)(I)(iii) and 45 C.F.R. § 1326.25(a)(3) (DD Act).

a.     DRP has contacted T.L.'s legal guardian or representative, Erie County, which has refused to act on his behalf.

b.     DRP has determined that it has probable cause both to believe that T.L. has been subject to abuse or neglect and, in addition, to believe that T.L.'s health and safety is in serious and immediate jeopardy. T.L. has been subject to repeated use of physical restraints at Loysville YDC and NCSTU that have caused him physical and emotional harm.

21

Given his history, it is likely those restraints will continue to be used and, particularly given his asthma, they place him at great risk of harm.

## V.   Claims

69.   Paragraphs 1 through 68 are incorporated herein by reference.

70.   DRP has been designated as the protection and advocacy system in Pennsylvania pursuant to the PAIMI and DD Acts.

71.   Under 42 U.S.C. § 1983, the Defendant may not act under color of state law to deny DRP the access to records to which it is entitled under the PAIMI and DD Acts.

72.   The PAIMI and DD Acts confer authority on DRP to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in" Pennsylvania.  42 U.S.C. §§ 10805(a)(1)(B), 15043(a)(2)(A)(i).

73.   T.L. is an individual with mental illness who is within the group of persons for whom DRP may advocate under the PAIMI Act.  42 U.S.C. § 10802(4).

74.   T.L. is an individual with a developmental disability who is within the group of persons for whom DRP may advocate under the DD Act.  42 U.S.C. § 15002(8).

22

75.    Defendant has refused to provide DRP with T.L.'s records contrary to the requirements of the PAIMI and DD Acts, 42 U.S.C. §§ 10805(a)(4), 15043(a)(2)(I).

76.    Defendant's actions and omissions under color of state law violate 42 U.S.C. § 1983 and the PAIMI Act, 42 U.S.C. § 10805(a)(4) and 42 C.F.R. § 51.41, and the DD Act, 42 U.S.C. § 15043(a)(2)(I) and 45 C.F.R. § 1326.25.

## VI.    **Relief Requested**

77.    Plaintiff respectfully requests that the Court award the following relief:

      a.    exercise jurisdiction over this action;

      b.    issue appropriate declaratory and injunctive relief;

      c.    grant such other relief as may be appropriate, including reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

Dated:  March 7, 2019      By:    /s/ Andrew Favini
                  Carol Horowitz (PA 81660)
                  Andrew Favini (PA 316339)
                  Disability Rights Pennsylvania
                  429 Fourth Avenue, Suite 701
                  Pittsburgh, PA  15219-1505
                  (412) 391-5225
                  (412) 467-8940 (fax)
                  chorowitz@disabilityrightspa.org
                  afavini@disabilityrightspa.org

                  Counsel for Plaintiff