IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DISABILITY RIGHTS PENNSYLVANIA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:19-cv-00062-SPB |
| | : | |
| ERIE COUNTY, PENNSYLVANIA, | : | |
| | : | |
| Defendant. | : | |

## BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff, Disability Rights Pennsylvania (DRP), through its counsel seeks a preliminary injunction to enjoin Defendant, Erie County, to produce records it has requested relating to T.L., a youth with mental illness in the custody of Erie County.  DRP is likely to succeed on the merits of its claim that Erie County's refusal to produce the requested records violates 42 U.S.C. § 1983 and the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI Act), 42 U.S.C. §§ 10801-10827, and the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. §§ 15041-15045, the denial of the requested injunction would result in irreparable harm, and the balance of equities favors issuance of the requested injunctive relief.

## FACTUAL BACKGROUND

Pursuant to the Developmental Disabilities Assistance and Bill of Rights Act (the DD Act), 42 U.S.C. §§ 15041-15045, the Protection and Advocacy for Individuals with Mental Illness Act (the PAIMI Act), 42 U.S.C. §§ 10801-10827, and the Protection and Advocacy of Individual Rights Act (the PAIR Act), 29 U.S.C. § 794e, Congress authorized states to designate protection and advocacy systems (P&A systems) to protect the rights of and advocate for people with disabilities. DRP is the organization designated by the Commonwealth of Pennsylvania pursuant to the DD, PAIMI, and PAIR Acts as the P&A system in Pennsylvania.  Darr Decl. ¶ 2 (Exh. A); Dep't of Public Welfare Office of Mental Retardation, Bulletin 00-03-02 (Feb. 19, 2003) (Exh. B).[1]

In the fall of 2017, DRP received complaints that youth with mental illness and developmental disabilities institutionalized at Loysville Youth Development Center (Loysville YDC), a youth detention center operated by the Pennsylvania Department of Human Services (PaDHS) located in Perry County, had been subject to abuse.  Darr Decl. ¶ 4.  To investigate that

---

[1]  While Bulletin 00-03-02 states that "Pennsylvania Protection and Advocacy, Inc." is the designated protection and advocacy system under the DD, PAIMI, and PAIR Acts. Pennsylvania Protection and Advocacy, Inc. subsequently changed its corporate name and it is now known as DRP.  Darr Decl. ¶ 3.

complaint as well as to conduct a broader monitoring visit in accordance with its authority under the DD Act, 42 U.S.C. § 15043(a)(2)(B) and 45 C.F.R. § 1326.27, and the PAIMI Act, 42 U.S.C. §§ 10805(a)(1)(A), 10805(a)(3) and 42 C.F.R. § 51.42, DRP staff visited Loysville YDC in November 2017. *Id*. ¶ 5. During that visit, DRP staff interviewed a number of the youth and received signed authorizations from some of them to allow Pennsylvania Department of Human Services (PaDHS) to release their records. *Id.* ¶ 6.

Upon receipt and review of records from PaDHS relating to the Loysville YDC residents, DRP concluded that the use of restraints at that facility reflected abuse and neglect.  Darr Decl. ¶ 7.  Based on that conclusion, DRP in November 2018 undertook a wider investigation and monitoring of PaDHS youth detention centers, including North Central Secure Treatment Unit (NCSTU) in Montour County.  *Id.*  During the November 2018 visits to NCSTU and the other youth detention centers, DRP again interviewed a number of the youth and received signed authorizations from some of them to allow PaDHS to release their records.  *Id.* ¶ 8.  PaDHS provided DRP with records for youth 18 or older and youth under 18 who are dependent and with mental health records for non-dependent youth between the ages of 14 and 17.  *Id.*

At both Loysville YDC and NCSTU, DRP staff met and interviewed T.L., a resident of Erie County who is now 16 years old.  Darr Decl. ¶ 9. T.L. has mental health diagnoses, including post-traumatic stress disorder, disruptive mood dysregulation disorder, conduct disorder, and attention deficit hyperactivity disorder.  *Id.* ¶ 14.  These mental health impairments, which manifested before age 22 and are likely to continue indefinitely; substantially limit T.L.'s ability to provide self-care and self-direction and to learn and live independently; and reflect his need for services and supports for those disabilities.  *Id.*  T.L. also suffers from asthma.  *Id.*

It is DRP's understanding that T.L. was the victim of physical abuse in his family home.  Darr. Decl. ¶ 15.  DRP further understands that, in or around 2013, Defendant Erie County's Office of Children and Youth (OCY) instituted dependency proceedings and T.L. was adjudicated dependent. *Id.*  The dependency ruling conferred physical and legal custody of T.L. on the Erie County OCY.  *Id*. ¶ 16.  The dependency ruling further ordered that "[t]here shall be no visitation and/or contact between the parents and the minor child."  *Id.*

It is DRP's understanding that, at some point after his adjudication of dependency, T.L. was adjudicated as delinquent.  *See* Darr Decl.¶ 17.

DRP also understands that Defendant Erie County's Public Defender's Office (PDO) represented T.L. during his delinquency proceeding. *Id*.

It is DRP's understanding that since T.L. has been in the custody of the Erie County OCY he has been subject to psychiatric hospitalization at least twice and has otherwise been placed primarily in congregate settings where he has been subject to abuse and neglect.

- T.L. spent a year at a large, segregated residential treatment facility, during which time he was subject to more than 30 disciplinary sanctions and ultimately discharged for "failure to adjust."

- T.L. was at Loysville YDC for two months at the end of 2017. During that relatively short period, he was involved in at least 13 incidents. Some of those involved use of severe physical restraints, causing him physical and emotional harm.

- T.L. has been institutionalized at NCSTU since January 2018, where he again has been subject to use of severe physical restraints, causing him physical and emotional harm. Additionally, T.L.'s asthma creates a unique risk of physical harm when he is subject to restraints. It is also reported that he is the "scapegoat" of his dorm at NCSTU.

Darr Decl. ¶ 18.

Aside from being subject to harmful restraints, it is DRP's under-standing that T.L. has not received an appropriate program of treatment, services, and supports while in Defendant's custody.  For instance:

- T.L. is in the 8th grade, but his reading and math skills as of September 2018 were tested at about the fourth-grade level.

- T.L.'s independent living skills are similarly far below where they should be for a 16-year-old.

- Over 18 months ago, a psychiatrist suggested that T.L. should be tested to determine if he has an intellectual disability (which could explain both his poor academic performance and his inability to benefit from mental health services that are not adapted). But it is DRP's understanding that such testing has not occurred.

- The Erie OCY has identified no release resource for T.L., which is an impediment to a timely and successful discharge.

Darr Decl. ¶ 19.

During his interview with DRP staff at NCSTU, T.L. signed an authori-zation to allow both the Erie OCY and PDO to release his records to DRP.

Darr Decl. ¶ 10.[2]  DRP submitted written requests to the Erie OCY and

PDO for T.L.'s records together with copies of his signed authorization.  *Id.*

¶ 11; Letters dated Dec. 10, 2018 (Exh. C).

On December 14, 2018, Erie County's Solicitor responded to DRP's

requests, stating that the release was not valid because T.L.'s birth parents

must provide authorization.  Email from R. Perhacs to S. Levin dated Dec.

14, 2018 (Exh. D).  DRP responded, noting that: (a) that T.L. has authority

under the Pennsylvania Mental Health Procedures Act to control release of

his mental health records; (b) it understood T.L. to be dependent, but if that

was not correct Erie County should provide documentation to that effect as

well as the birth parents' contact information; and (c) DRP is entitled to

receive the requested records without any authorization under federal law

because it had probable cause to conclude that abuse or neglect had

occurred.  Email from S. Levin to R. Perhacs dated Dec. 20, 2018 (Exh. D).

Having received no response, DRP emailed the Erie County Solicitor

on January 22, 2019 to inquire as to the status of the request.  Email from

S. Levin to R. Perhacs dated Jan. 22, 2019 (Exh. D).  The Solicitor

responded, stating that the County's "position had not changed."  Email

---

[2]  T.L. also authorized PaDHS to release his records to DRP.  Since
T.L. is dependent, PaDHS provided DRP with records.  Darr Decl. ¶ 9.

from R. Perhacs to S. Levin dated Jan. 22, 2019 (Exh. D).  Yet, the Solicitor

stated in that email that T.L.'s court-appointed guardian ad litem was the

only guardian who could release his records, *id.*, which in fact reflected a

change in the County's prior position that T.L.'s birth parents must author-

ize the release.  *Id.*  Following up, DRP asked the Solicitor to confirm that

Erie County would not release even T.L.'s mental health records based on

his authorization and to request the guardian ad litem's contact information.

Email from S. Levin to R. Perhacs dated Jan. 22, 2019 (Exh. D).  The

Solicitor confirmed that the County would not release T.L.'s mental health

records and provided the guardian ad litem's contact information.  Email

from R. Perhacs to S. Levin dated Jan. 23, 2019 (Exh. D).

While DRP did not agree with Erie County's position that T.L.'s

guardian ad litem had authority to authorize release of his records, it sought

to resolve the matter by writing to the attorney identified as the guardian ad

litem to explain the situation and ask for her authorization.  Letter from S.

Levin to D. Heasley dated Jan. 25, 2019 (Exh. E).  The attorney responded,

writing that she could not confirm or deny that she was T.L.'s guardian ad

litem and that her only role was to represent the interests of youth in state

court dependency proceedings. Letter from D. Heasley to S. Levin dated

Jan. 31, 2019 (Exh. F).  She specifically wrote: "I am not the guardian of

any of the children I represent; rather I am the guardian *ad litem*.  The Office of Children and Youth is the legal guardian of dependent children in Erie County. … I have no authority to authorize the release of any information pertaining to any of my dependent child clients."  *Id.*  DRP forwarded that letter to Erie County's Solicitor, advising him that DRP was entitled to the requested records since T.L.'s guardian is a governmental entity.  Email from S. Levin to R. Perhacs dated Jan. 31, 2019 (Exh. F).

On February 4, 2019, outside counsel for Erie County contacted DRP to discuss the records request and he asked for some additional information, which DRP provided.  *See* Email from S. Levin to G. Shapira dated Feb. 4, 2019 (attachments omitted) (Exh. G).  On February 14, 2019, DRP asked Erie County's outside counsel for an update.  Email from S. Levin to G. Shapira dated Feb. 14, 2019.  (Exh. G).  On February 22, 2019, Erie County's Solicitor advised DRP that the County "remains of the view that an effective release is necessary and that it cannot, on its own authority, release the records you request.  … Even assuming it had the power to authorize release, the County would decline to do so as a matter of discretion as it does not have a basis for the action."  Email from R. Perhacs to S. Levin dated Feb. 22, 2019 (Exh. H).  This lawsuit followed.

# **ARGUMENT**

## **I.  PLAINTIFF SATISFIES THE STANDARD FOR ISSUANCE OF A PRELIMINARY INJUNCTION.**

### **A.  Standard for Issuance of a Preliminary Injunction.**

"[T]o obtain a preliminary injunction the moving party must show as a prerequisite '(1) a reasonable probability of eventual success in the litigation and (2) that it will be irreparably injured … if relief is not granted ….'" *Reilly v. City of Harrisburg*, 858 F.3d 173, 176, 179 (3d Cir. 2017) (citation omitted).[3]  If those criteria are met, the court "'should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction and (4) the public interest." *Id.* (citation omitted).  In other words, the court "should balance those four factors so long as the party seeking the injunction meets the threshold on the first two. *Id.* at 176, 179.  As discussed below, those factors all weigh in favor of issuance of Plaintiff's requested relief.

---

[3]  The moving party's demonstration that there is a reasonable probability that it will succeed on the merits "requires a showing significantly better than negligible but not necessarily more likely than not[.]" *Reilly*, 858 F.3d at 179 n.3.

## B.  Plaintiff Is Likely to Succeed on the Merits of Its Claims that Defendant Violated Section 1983 and the PAIMI and DD Acts.

### 1.  Overview of the P&A Systems' Authority to Access Records Under the PAIMI and DD Acts.

Congress created independent protection and advocacy systems in 1975 through the DD Act, Pub. L. No. 94-103, § 203, 89 Stat. 486, 504 (1975), now codified at 42 U.S.C. §§ 15041-15045.  The DD Act's purpose is "to provide for allotments to support a protection and advocacy system … in each State to protect the legal and human rights of individuals with developmental disabilities."  42 U.S.C. § 15041.  The DD Act provides that, to receive allotments, a state must put "in effect a system to protect and advocate the rights of individuals with developmental disabilities."  42 U.S.C. § 15043(a)(1).  These are known as the "P&A systems."

A little more than a decade later, Congress expanded the P&A systems' responsibilities by enacting the PAIMI Act, Pub. L. No. 99-319, 100 Stat. 478 (1986), codified at 42 U.S.C. §§ 10801-10827.  The purpose of the PAIMI Act is "to assist states to establish a protection and advocacy system for individuals with mental illness …."  42 U.S.C § 10801(b).  Congress directed that the PAIMI P&A system be the same as the P&A system established pursuant to the DD Act.  42 U.S.C. § 10802(2).

DRP is the designated P&A system in Pennsylvania.  *See* discussion, *supra,* at 2.  As such, it can exercise the authority conferred by Congress on such systems through the PAIMI and DD Acts.  The PAIMI and DD Acts vest P&A systems with a wide range of authority, including authority to "pursue legal, administrative, and other appropriate remedies" to assure the protection of and advocacy for the rights of individuals with developmental disabilities and mental illness.  42 U.S.C. §§ 10805(a)(1)(B), 15043(a)(2)(A)(i).  Specifically, the PAIMI and DD Acts allow P&A systems to:

- **investigate suspected abuse and neglect**, 42 U.S.C. § 10805(a)(1)(A) (PAIMI Act); 42 U.S.C. § 15043(a)(2)(B) (DD Act);

- **have access to places** where services are provided to people with disabilities both to investigate allegations of abuse and neglect and simply for monitoring, 42 U.S.C. § 10805(a)(3) and 42 C.F.R. § 51.42 (PAIMI Act); 42 U.S.C. § 15043(a)(2)(H) and 45 C.F.R. § 1326.27 (DD Act);

- **have access to people with disabilities** in locations where they receive services, 42 U.S.C. § 10805(a)(3) and 42 C.F.R. §

51.42 (PAIMI Act); 42 U.S.C. § 15043(a)(2)(H) and 45 C.F.R. §

1326.27 (DD Act);and

- **have access to records** of people with disabilities under

    certain defined circumstances, 42 U.S.C. § 10805(a)(4) and 42

    C.F.R. § 51.41 (PAIMI Act); 42 U.S.C. § 15043(a)(2)(I) and 45

    C.F.R. § 1326.25 (DD Act).

As the Eleventh Circuit acknowledged: "It is clear that the Act

provides express authority for P&As to gain broad access to records,

facilities, and residents to assure that the Act's mandates can be effectively

pursued." *Alabama Disabilities Advocacy Program v. J.S. Tarwater*

*Developmental Center*, 97 F.3d 492, 497 (11th Cir. 1996);[4] *see also*

*Disability Rights Wisconsin v. State of Wisconsin Dep't of Public Instruc-*

*tion*, 463 F.3d 719, 725 (7th Cir. 2006) (indicating that Congress intended

that P&A systems have "broad investigatory authority to carry out their

responsibility to protect individuals with" disabilities).

---

[4]   Although the Eleventh Circuit referenced the DD Act, its conclusion
applies as well to the PAIMI Act since the statutes are *in pari materia* and
so generally should be interpreted consistently.  *See Advocacy, Inc. v.*
*Tarrant County Hosp. Dist.*, No. 4:01-CV-062-BE, 2001 WL 1297688, at *2
n.4 (N.D. Tex. Oct. 11, 2001); *Alabama Disabilities Advocacy Program v.*
*J.S. Tarwater Developmental Center*, 894 F. Supp. 424, 428 (M.D. Ala.
1995), *aff'd*, 97 F.3d 492 (11th Cir. 1996); 62 Fed. Reg. 53,548, 53,549
(Oct. 15, 1997).

### 2. The PAIMI and DD Acts Authorize DRP
### to Access T.L.'s Records from Erie County.

As noted, *supra,* at 13, the PAIMI and DD Acts authorize P&A systems, including DRP, to secure records of individuals with mental illness and developmental disabilities, such as T.L., under certain defined circumstances.[5]  The failure to disclose records to a P&A system in accordance with the PAIMI and DD Acts violates those statutes and entitles a P&A system to appropriate relief.  *See, e.g.*, *Michigan Protection & Advocacy Service, Inc. v. Flint Community Schools*, 146 F. Supp. 3d 897, 901-03 (E.D. Mich. 2015) (in granting preliminary injunction, court found that defendant violated the PAIMI and DD Acts by failing to promptly disclose requested records to the P&A system);  *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d, 1039, 1050 (E.D. Wis. 2001) (in granting preliminary injunction, court determined that defendants' refusal to provide deceased men's records to the P&A system violated the PAIMI and DD Acts).  The PAIMI and DD Acts authorize DRP to receive T.L.'s records

---

[5]  T.L. mental health diagnoses qualify him as an individual with mental illness under the PAIMI Act.  42 U.S.C. § 10802(4).  T.L. also qualifies as an individual with a developmental disability under the DD Act because his mental impairments arose prior to age 22; are likely to continue indefinitely; result in substantial limitations in his ability to provide self-care, to provide self-direction, to learn, and to live independently; and reflect his need for appropriate services and supports.  42 U.S.C. § 15002(8).

from Erie County so that Erie County's refusal to provide those records violates those statutes.

The PAIMI and DD Acts provide that a P&A system has the right to access the records of an individual with mental illness when s/he or his/her legal guardian or representative authorizes such access.  42 U.S.C. § 10805(a)(4)(A) and 42 C.F.R. § 51.41(b)(1) (PAIMI Act); 42 U.S.C. § 15043(a)(2)(I)(i) and 45 C.F.R. § 1326.25(a)(1) (DD Act).  A P&A system can secure records when it has the individual's or legal representative's authorization regardless of whether there has been any complaint or probable cause to believe that the individual has been subject to abuse or neglect. *See Michigan Protection & Advocacy Service, Inc. v. Flint Community Schools*, 146 F. Supp. 3d at 907-08.

T.L. executed a release to authorize DRP to access his records from the Erie County OCY and PDO.  *See* Letters dated Dec. 10, 2018 and attachments (Exh. C).  Although T.L. is a minor, he nonetheless has capacity to authorize the release of some of his records in accordance with Pennsylvania law.  Regulations promulgated under the Pennsylvania Mental Health Procedures Act (MHPA) provide that youth age 14 and older have authority to release their own mental health records.  55 Pa. Code §

5100.33.[6]  In addition, Pennsylvania Juvenile Court Rules provide that

juveniles in delinquency proceedings have authority to access the official

court record.  237 Pa. Code § 160.A.2.  Since a youth can access his own

court record, he has authority to authorize a third party to access that same

record.  Accordingly, T.L.'s authorization was legally sufficient to require

Erie County to release to DRP his mental health records[7] as well as his

official court record, regardless of his status as a minor.

    To the extent that T.L.'s authorization was not sufficient to allow DRP

to access all his records from Erie County, the PAIMI and DD Acts provide

an alternative basis that requires Erie County to disclose all such records to

DRP.  Specifically, the PAIMI and DD Acts provide that a P&A system,

such as DRP, can access the records of an individual with mental illness or

developmental disabilities (regardless of whether there is any authorization)

when: (a)  it has probable cause to believe that the individual has been

subject to abuse or neglect, (b) the individual is unable to authorize access,

---

[6]  This stems from the fact that the MHPA permits youth age 14 and older to consent to mental health treatment.  50 P.S. § 7201.

[7]  DRP would expect Erie County to have many mental health records related to T.L., including records relating to his psychiatric hospitalizations, records relating to his placements in mental health facilities, and possibly psychiatric or psychological evaluations since he has been in the custody of the Erie County OCY.  Darr Decl. ¶ 12.

and (c) the individual either has no guardian or legal representative or has a guardian which is a state or one of its political subdivisions, *i.e.*, a governmental guardian. 42 U.S.C. § 10805(a)(4)(B) and 42 C.F.R. § 51.41(b)(2) (PAIMI Act); 42 U.S.C. § 15043(a)(2)(I)(ii) and 45 C.F.R. § 1326.25(a)(2). DRP is entitled to access T.L.'s records from Erie County – even without any authorization – since each of those criteria is met here:

- ▪ DRP has determined that it has probable cause to believe that T.L. has been subject to abuse and neglect.[8] The PAIMI and DD Acts broadly define "abuse" (to include, *inter alia*, actions or failures to act that may cause injury to individuals with mental illness, including the inappropriate use of restraints) and "neglect" (to include, *inter alia*, failure to establish or implement appropriate treatment plans, including discharge plans and failure to provide a safe environment). 42 C.F.R. § 51.2; 45 C.F.R. § 1326.19. As described, *supra*, at 5-6, T.L. has been

---

[8] DRP is the final arbiter of whether it has probable cause to believe that abuse or neglect has occurred, precluding second-guessing of its determination. *See In re Disability Rights Idaho Request for Ada County Coroner Records Relating to Death of D.T.*, 168 F. Supp. 3d 1282, 1297 (D. Idaho 2016); *Protection and Advocacy System, Inc. v. Freudenthal*, 412 F. Supp. 2d 1211, 1219 (D. Wyo. 2006) (collecting cases); *Ohio Legal Rights Service v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877, 877 (S.D. Ohio 2005).

subject to the use of inappropriate and harmful physical restraints (which are particularly risky due to his asthma); T.L. has not received appropriate education and life skills services; T.L. does not have an appropriate discharge plan since he has no family or other resources identified who are willing to take him; and T.L. has not been assessed to determine if he has intellectual disability, as had been recommended by a psychiatrist over a year ago.

- ▪ T.L., due to his status as a minor, is unable to authorize access to some of his records.

- ▪ The Erie County OCY has legal and physical custody of T.L. and thus is his legal guardian for purposes of the PAIMI Act. The Erie County OCY is part of Erie County, a political subdivision of Pennsylvania, and, as such, is a governmental guardian.[9]

---

[9] T.L.'s birth parents cannot be considered his legal guardians under the PAIMI Act. Not only was T.L. removed from their physical and legal custody, but the Court of Common Pleas has barred them from visiting or even contacting T.L. It would be absurd to vest individuals who are judicially barred from involvement in T.L.'s life with authority to determine whether to release his records. So, too, T.L.'s guardian ad litem has disclaimed authority to release his records and, indeed, given her limited role in the dependency case, she would not be a legal representative under

In short, the PAIMI and DD Acts entitle DRP to access T.L.'s mental health records and court records from Erie County based solely on his written authorization and entitle DRP to access all his records from Erie County, without authorization from anyone, because he has a governmental guardian and DRP has probable cause to conclude he has been subject to abuse and neglect.  Erie County's refusal to provide T.L.'s records to DRP thus violates the PAIMI and DD Acts.  As one court explained:

> Where [a defendant] denies or places restrictions on an advocacy agency's access to records, the mandatory provisions relating to [the P&A system's] authority to investigate incidents of abuse and neglect are rendered nugatory.  [citation and footnote omitted] This not only hampers redress of past and current abuse and neglect, but has a detrimental effect on the advocacy agency's future performance of its statutory mandate.  [citation omitted] … Timely access to records is essential for effective communication, [citation omitted], and access to patient records is necessary for the P&A system to serve its clients, evaluate client concerns, and determine whether a client has a legal claim.  [citation omitted]

*Advocacy Inc. v. Tarrant County Hosp. Dist.*, 2001 WL 1297688, at *4.

---

the PAIMI and DD Acts.  42 C.F.R. § 51.2 (definition of legal representative under PAIMI Act); 45 C.F.R. § 1326.19 (same under DD Act).

### C.  Plaintiff Will Suffer Irreparable Harm
### If the Requested Relief Is Denied.

"An injunction is appropriate only where there exists a threat of
irreparable harm such that legal remedies are rendered inadequate."
*Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997); *accord West Virginia
University Hospitals, Inc. v. Rendell*, Civil Action No. 1:CV-09-1684, 2009
WL 3241849, at *13 (M.D. Pa. Oct. 2, 2009).  Irreparable harm will result if
DRP is denied a preliminary injunction requiring Erie County to produce
T.L.'s records.

DRP's investigation of the alleged abuse and neglect of T.L. will be
delayed absent such relief.  Given the circumstances and allegations
relating to T.L., a delay in DRP's investigation may expose T.L. to even
greater harm.  Analogously, a court issued a preliminary injunction
requiring a school district to promptly provide requested student records to
a P&A system investigating the adequacy of special education and other
services provided to the students.  *Michigan Protection & Advocacy Service, Inc. v. Flint Community Schools*, 146 F. Supp. 3d at 903.  The court
recognized that the P&A system's clients "are at risk of suffering sufficient
periods of inadequate education if access to their records is delayed for
months on end."  *Id.*

Moreover, the simple interference with DRP's mandate under the PAIMI Act that precludes it from carrying out its federally imposed duties constitutes irreparable harm that warrants preliminary injunctive relief.  In *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, the court granted preliminary injunctive relief to the Wisconsin P&A system under the PAIMI and DD Acts based on the defendants' refusal to produce the requested records of two deceased men.  Finding that the P&A system had established irreparable harm, the court explained:

> [T]he defendants' refusal to provide [the P&A system] with records that it is entitled to review (indeed, charged to review as part of its responsibilities) does, in a very real and readily identifiable way, pose a threat to the plaintiff's being able to discharge its obligations.  And no amount of damages will remedy that sustained harm.

131 F. Supp. 2d at 1051; *cf. In re Disability Rights Idaho Request for Ada County Coroner Records Relating to Death of D.T.*, 168 F. Supp. 3d at 1300 (in granting permanent injunction requiring defendant to provide P&A system with requested records, court held and cited multiple cases supporting conclusion that a P&A system suffers irreparable harm when it is unable to fulfill its statutory mandates).

### D. Defendant Will Not Be Harmed If the
### Requested Relief Is Granted.

Granting the requested preliminary injunctive relief will not harm Erie

County. Erie County merely must produce records in its possession,

custody, or control relating to T.L., a task that should not be arduous.

Moreover, Erie County's interest should be aligned with DRP's. Since T.L.

is a dependent child in its custody, it should welcome DRP's assistance to

determine whether he has been subject to abuse or neglect and to

advocate on his behalf.[10]

### E. The Public Interest Favors Issuance of
### the Requested Preliminary Injunctive Relief.

"[T]he Protection and Advocacy Acts embody the compelling public

interests that Congress expressed in the purpose of each enactment, which

are 'to ensure that the rights of individuals with mental illness are

protected,' and 'to assist States to establish and operate a protection and

advocacy system for individuals with mental illness which will [ ] protect and

advocate the rights of such individuals to ensure the enforcement of the

Constitution and Federal and State statutes.'" *Michigan Protection &*

---

[10]   The confidentiality of T.L.'s records does not preclude their release
to DRP pursuant to its authority under the PAIMI and DD Acts since the
Acts imposes a duty of confidentiality on P&A systems. 42 U.S.C. §
10806(a) (PAIMI Act); 45 C.F.R. § 1326.28 (DD Act); *Pennsylvania Protection and Advocacy, Inc. v. Houstoun*, 228 F.3d 423, 428-29 (3d Cir. 2000).

*Advocacy Service, Inc. v. Flint Community Schools*, 146 F. Supp. 3d at 904 (quoting 42 U.S.C. § 10801(b)) (brackets in original); *accord In re Disability Rights Idaho Request for Ada County Coroner Records Relating to Death of D.T.*, 168 F. Supp. 3d at 1301; *Iowa Protection and Advocacy Services, Inc. v. Rasmussen*, 521 F. Supp. 2d 895, 901-02 (S.D. Iowa 2002).  "Those purposes are frustrated when the efforts of the agency designated to advo-cate for the rights of the mentally ill … are stymied for months on end by the defendants' failure or refusal to disclose records" needed for the P&A system to conduct its investigation so that issuance of a preliminary injunc-tion to provide the P&A system with the requested records is in the public interest.  *Michigan Protection & Advocacy Service, Inc. v. Flint Community Schools*, 146 F. Supp. 3d at 904.

## II.  <u>BOND SHOULD NOT BE REQUIRED.</u>

The Third Circuit has acknowledged that Federal Rule of Civil Proce-dure 65(c)'s bond requirement may be waived in non-commercial cases based on consideration of: (1) the possible loss to the enjoined party and the hardship that a bond requirement would impose on the applicant, and (2) the special nature of suits to enforce important federal rights.  *Temple Univ. v. White*, 941 F.2d 201, 219-20 (3d Cir. 1991), *cert. denied*, 502 U.S. 1032 (1992); *see also Coulter v. East Stroudsburg Univ.*, No. 3:10-CV-

0877, 2010 WL 1816632, at *4 (M.D. Pa. May 5, 2010) (waiving bond in civil rights case involving small amount of money where the balance of hardships favors the plaintiff).  DRP is a non-profit corporation seeking to enforce vital federal rights on behalf of a vulnerable, dependent, institutionalized youth with mental illness and developmental disabilities. Accordingly, bond is appropriately waived in these circumstances.

## **CONCLUSION**

For all the reasons set forth above, Plaintiff respectfully requests that the Court issue a preliminary injunction enjoining Defendant to produce the documents requested by Plaintiff that relate to T.L. within seven (7) days.

Respectfully submitted,

Dated:  March 14, 2019          By:    /s/ Andrew Favini
                                       Carol Horowitz (PA 81660)
                                       Andrew Favini (PA 316339)
                                       Disability Rights Pennsylvania
                                       429 Fourth Avenue, Suite 701
                                       Pittsburgh, PA  15219-1505
                                       (412) 391-5225 x. 132
                                       (412) 467-8940 (fax)
                                       afavini@disabilityrightspa.org

                                       Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew Favini, hereby certify that true and correct copies of

Plaintiff's Motion for a Preliminary Injunction, Brief and Exhibits in Support

of that Motion, and proposed Order were served on the following by first-

class mail and email on this 14th day of March, 2019:

Kathy Dahlkemper
Erie County, County Executive
140 West 6th Street
Erie, PA  16501
countyexecutive@eriecountypa.gov

Gary Shapira, Esquire
Shapira, Hutzelman and Smith
305 West 6th Street
Erie, PA  16507
gshapira@shapiralaw.com

Richard W. Perhacs, Esquire
Erie County Solicitor
Erie County Courthouse
140 West 6th Street, Room 114
Erie, PA  16501
rperhacs@eriecountypa.gov

/s/ Andrew Favini
Andrew Favini